UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA TAMPA DIVISION

| | |
|---|---|
| PLAINTIFFS ROBERT B. HALLIDAY III, Individually, AND PATRICIA M. HALLIDAY, Individually and Collectively as Next of Kin and as Personal Representatives of their Son, Fort Bliss Whistleblower Soldier RICHARD HALLIDAY, Deceased<br><br>*Plaintiffs,*<br><br>v.<br><br>SHERIFF KURT A. HOFFMAN, in his official and individual capacity, MICHELLE HAUCKE-AMBURGY, CARLOS MANUEL SALAS, RONALD C. BAIROS, BRIAN BARRETT, TAVITA NUUSA, AMANDA WOLFORD, LELANI HART, THE SARASOTA COUNTY SHERIFF'S OFFICE, and JOHN DOES 1-10 (Unknown Federal Agents),<br><br>*Defendants.* | CIVIL ACTION NO.<br>8:26-cv-01204-WFJ-CPT |

## PLAINTIFFS' FIRST AMENDED COMPLAINT FOR DAMAGES, DECLARATORY, AND INJUNCTIVE RELIEF

**TO THE HONORABLE JUDGE OF THE COURT:**

COMES NOW PLAINTIFFS ROBERT B. HALLIDAY III AND PATRICIA M. HALLIDAY, proceeding pro se, individually and collectively as next of kin and as personal representatives of their son, Fort Bliss whistleblower Soldier Richard Halliday, deceased, complaining of the Defendants named below, and respectfully requesting damages, injunctive

1.

relief, and such other and further relief to which they may be entitled, and respectfully file this First Amended Complaint pursuant to this Court's Order (Doc. 6), in the above-captioned case. Plaintiffs will show the Court the following:

## I. INTRODUCTION

1. This civil rights action arises from the Sarasota County Sheriff's Office's creation and execution of a completely fabricated 'FEDERAL FELONY NO BOND WARRANT / DESERTION' and a SEARCH WARRANT of the Plaintiffs' home and possessions in Sarasota, Florida, on September 1, 2020, which deprived Plaintiffs of their liberty. They executed a false and invalid purported 'warrant' at Plaintiffs' home and possessions.

2. There was never a valid warrant. No probable cause affidavit, no issuing authority, no warrant number, and no authenticated document ever existed.

3. Plaintiffs' son, Richard Karol Halliday, was a United States Army soldier and protected whistleblower who reported to the Inspector General, Child Protective Services, CID, FBI, El Paso Police Department, and Washington D.C.. The Army's Line of Duty (LOD) Investigation confirmed Richard was never AWOL and never a deserter. He was killed in the line of duty on a U.S. military base.

4. Despite this, the Sarasota County Sheriff's Office knowingly simulated a "FEDERAL FELONY NO BOND WARRANT / DESERTION" and a SEARCH WARRANT of the Plaintiffs' home and possessions—a fraudulent legal process—and executed it at Plaintiffs' home against a Florida resident, used it to intimidate grieving parents who were actively searching for their son, and then concealed the complete absence of any legitimate documentation. This false deserter/fugitive narrative was not confined to Florida. It was simultaneously injected into official records in Mexico and internationally through the tampering of Richard Halliday's INTERPOL Yellow Notice. These actions were part of a coordinated, multi-jurisdictional effort to discredit Richard's whistleblower reports and

2

prevent his family from learning the truth about his murder on Fort Bliss. The false deserter narrative was not an isolated act of misconduct. It was part of a coordinated effort to avoid the scrutiny that had engulfed the Army following the murder of Vanessa Guillen at Fort Hood just three months earlier. Richard Halliday was publicly known as the 'Vanessa Guillen First Absent Soldier.' By labeling him a deserter and fugitive, Defendants and their co-conspirators sought to discredit Richard's whistleblower reports, deflect media attention, and prevent his family from learning the truth about his murder on base.

5. The warrant was fraudulent from its inception. The Sheriff's Office could not produce: (a) a probable cause affidavit; (b) the issuing authority; (c) a warrant number; or (d) an authenticated copy of the warrant. Despite Plaintiffs' repeated requests the defendants failed to produce the original or copy of the alleged warrants, the Sheriff's Office has denied them access to any such documentation. The Sheriff's Office later admitted the warrant "was not entered into WINGS" and records "may be lost."

6. Plaintiffs bring this action to hold Defendants accountable for their unconstitutional conduct and to clear the name of a true American hero.

## II. JURISDICTION AND VENUE

7. This Court has subject matter jurisdiction under *28 U.S.C. §§ 1331 and 1343* for violations of the United States Constitution and 4*2 U.S.C. § 1983*. This Court has supplemental jurisdiction over state law claims pursuant to *28 U.S.C. § 1367*.

8. Venue is proper in this District pursuant to *28 U.S.C. § 1391(b)(2)* because a substantial part of the events giving rise to the claims occurred in Sarasota County, Florida:

    (a)    a purported 'warrant' was entered into the SCSO system in Sarasota;

    (b)    the purported 'warrant' was executed at Plaintiffs' Sarasota home, resulting in the deprivation of Plaintiffs' liberty;

    (c)    Defendants contacted Plaintiffs in Sarasota;

3

(d)    Defendants threatened extradition in Sarasota; and

(e)    Defendants concealed records in Sarasota.

(f)    Plaintiffs' home and possessions were unlawfully searched in Sarasota.

(g)    Plaintiffs' liberty were deprived in Sarasota.

### III. TOLLING OF STATUTE OF LIMITATIONS

9. Although the events began in 2020, the statute of limitations is tolled by fraudulent concealment, continuing violation, and equitable tolling. Defendants actively concealed the fraud by admitting the warrant "was not entered into WINGS" and that records "may be lost," while refusing to produce any underlying documentation. Plaintiffs only discovered the full extent of the fabrication upon receipt of the Line of Duty determination in January 2025.

10. Plaintiffs exercised reasonable diligence throughout by engaging Congress, filing public records requests, and seeking military accountability. The harm caused by the false warrant is ongoing. Richard's legacy remains tarnished. The SCSO has failed to correct the records. The concealment continues to this day. Despite repeated demands for the fraudulent warrants, plaintiffs were blocked due to ongoing investigations. Citation: *Havens Realty Corp. v. Coleman, 455 U.S. 363 (1982)*.

### IV. THE PARTIES

11. Plaintiff Robert B. Halliday III is the father of Richard Karol Halliday and the owner of the residence at 2122 Sylvan Lea Drive, Sarasota, Florida. He is a retired Lieutenant Colonel, U.S. Army.

12. Plaintiff Patricia M. Halliday is the mother of Richard Karol Halliday and co-owner of the residence at 2122 Sylvan Lea Drive, Sarasota, Florida.

13. Defendant Sheriff Kurt A. Hoffman is the Sheriff of Sarasota County. He is sued in his official and individual capacity. He is responsible for the policies, customs, training, and supervision of the Sarasota County Sheriff's Office. He may be served at the Sarasota County Sheriff's Office, 6010 Cattleridge Boulevard, Sarasota, Florida 34232; at 2071 Ringling Boulevard, Sarasota, Florida 34237;

4

or at 9040 Falcon Court, Venice, Florida 34293, and at such other location as may be determined through discovery.

14. Defendant Michelle Haucke-Amburgy is a Warrants Technician for the Sarasota County Sheriff's Office. She is sued in her official and individual capacity. she may be served at the Sarasota County Sheriff's Office, 6010 Cattleridge Boulevard, Sarasota, Florida 34232; at 6091 Fronda Ave. North Port, FL 34291, and at such other location as may be determined through discovery.

15. Defendant Ronald C. Bairos is a Law Enforcement Deputy who executed the warrant at Plaintiffs' home. He is sued in his official and individual capacity. He may be served at the Sarasota County Sheriff's Office, 6010 Cattleridge Boulevard, Sarasota, Florida 34232; at 6325 Lake Woodruff Ct. Sarasota, FL 34241; at 7754 State Road 72, Sarasota, FL, 34241, and at such other location as may be determined through discovery.

16. Defendant Brian Barrett is a Law Enforcement Deputy who assisted in executing the warrant. He is sued in his official and individual capacity. He may be served at the Sarasota County Sheriff's Office, 6010 Cattleridge Boulevard, Sarasota, Florida 34232; at 2071 Ringling Boulevard, Sarasota, Florida 34237; or at 1215 S. Clark St. Arlington, VA 22202, and at such other location as may be determined through discovery.

17. Defendant Amanda Wolford is the Public Records Supervisor who oversaw and participated in the concealment of records. She is sued in her official and individual capacity. She may be served at the Sarasota County Sheriff's Office, 6010 Cattleridge Boulevard, Sarasota, Florida 34232, and at such other location as may be determined through discovery.

18. Defendant Sarasota County Sheriff's Office is a municipal entity responsible for the policies and practices that led to the constitutional violations, 6010 Cattleridge Boulevard, Sarasota, Florida 34232.

20. Defendant Tavita Nuusa is a disgraced former U.S. Army CID agent whose badge was

removed due to misconduct connected with our son's murder and caused the fake warrants to be issued and Plaintiffs' rights to be violated. Plaintiffs reserve the right to identify and name these parties through discovery.

21. Defendant Leilani Hart is agent Nuusa's girlfriend and the mother of Dallas Hart, our son's platoon and is primary individual that caused his death. She is a convicted criminal that acted with Nuusa to violate our civil rights and interfere with witnesses. Plaintiffs reserve the right to identify and name these parties through discovery.

22. Defendant Carlos Manuel Salas worked for the Chihuahua Attorney General's office and illegally lived in El Paso, Texas. He caused in coordination with CID an invalid INTERPOL NOTICE that caused the unlawful search in Florida. Plaintiffs reserve the right to identify and name these parties through discovery.

23. Defendants John Does 1-10 are unknown federal agents from the U.S. Army CID and JAG Corps. They originated the false warrant, conspired with the SCSO in the execution of the simulated search at Plaintiffs' home in Sarasota, Florida, and thereby deprived Plaintiffs of their liberty and constitutional rights. Plaintiffs reserve the right to identify and name these parties through discovery.

## V. FACTUAL BACKGROUND

24. Richard Halliday was an exemplary Soldier and whistleblower murdered in the Line of Duty. Richard Karol Halliday enlisted in the U.S. Army on April 9, 2018, listing his home of record as Naples, Florida. Richard excelled during Basic Combat Training at Fort Sill, Oklahoma. He graduated as the Distinguished Honor Graduate of Class #39-18 (the top-performing soldier in his class as determined by Drill Sergeants). Richard's GT score of 115 and his rapid promotions with waivers (E2 on 23 Oct 2018, PFC on 23 April 2019, and SPC on 1 Nov 2019) further demonstrate that he was a high-performing, intelligent, and dedicated soldier — the opposite of the "deserter" or "fugitive" narrative later fabricated by Defendants and others. At Fort Bliss, Texas, Richard witnessed and

6

reported serious criminal activity including child sex exploitation, weapons trafficking, and cartel-linked operations on base. On January 24, 2025, LTC Jonathan Baker informed Plaintiffs that the Line of Duty Investigation was complete and Richard was found killed "In the Line of Duty" and was never AWOL or a deserter. On August 6 and August 7, 2025, President Donald J. Trump sent two personal letters to Plaintiff Robert B. Halliday III acknowledging the family's loss and stating that Richard's "honorable service," "ultimate sacrifice," and "indelible legacy" are worthy of the "utmost respect of the entire Nation." Richard was publicly known as the 'Vanessa Guillen First Absent Soldier.' The Vanessa Guillen case—which had erupted just three months earlier at Fort Hood—had exposed the Army's failures to investigate missing soldiers and had sparked national protests and unprecedented media scrutiny. The Army was in 'damage mode' and desperate to avoid another scandal. Richard's case threatened to expose the same systemic failures—and far more, because he was a whistleblower who had reported trafficking and cartel operations on base."

25. On September 1, 2020, the Sarasota County Sheriff's Office simulated a "FEDERAL FELONY NO BOND WARRANT / DESERTION" into its system. No valid warrant ever existed. There was no probable cause affidavit, no issuing judicial officer, no warrant number, and no authenticated document. At the exact same time this fabrication was active, Leilani Hart — mother of Richard's platoon leader Dallas Wayne Hart and connected to accused CID leaks — confessed in a sworn affidavit to multiple serious crimes, including facilitating child sexual exploitation, possession of child pornography, failure to report child abuse, and facilitating the rape of a seven-year-old in her home. These crimes are tied to the same trafficking networks Richard had exposed.

26. Defendants Bairos and Barrett executed the simulated warrant at Plaintiffs' residence at 2122 Sylvan Lea Drive, Sarasota, Florida. Deputy Bairos confirmed Plaintiffs were 'very cooperative,' had filed a missing person's report, and offered to call if Richard appeared in Florida. Defendants nevertheless threatened extradition and conducted a search based on a document that had no legal

existence. The execution of this simulated search deprived Plaintiffs of their liberty.

27. Defendant Haucke-Amburgy admitted the warrant 'was not entered into WINGS' and that records 'may be lost.' The Sheriff's Office has never produced — and cannot produce — any probable cause affidavit, warrant number, issuing authority, or authenticated copy because none ever existed. Plaintiffs have repeatedly requested access to the purported warrant and all supporting documentation. On May 26, 2023, Plaintiff Robert B. Halliday submitted a formal public records request to the SCSO seeking, among other things, the probable cause affidavit, the issuing authority, the warrant number, and an authenticated copy of the warrant. Despite these repeated requests, the SCSO has refused to produce any such documentation, has admitted the warrant was not entered into WINGS, and has claimed that records 'may be lost.' Plaintiffs have been denied access to the warrant at every turn. This denial of access is part of the coordinated effort to conceal the truth about Richard Halliday's death and whistleblower status.

28. There was also a parallel fabrication of the false deserter narrative in Mexico that occurred contemporaneously with the Sarasota County Sheriff's Office's creation and execution of the fraudulent warrant in Florida. On or about October 2, 2020, Plaintiff Robert B. Halliday filed a formal Report of Absence in Ciudad Juárez under *Case No. 37-2020-0031343*. The official Mexican government document prepared under the direction of then-Fiscal de Distrito Zona Norte Carlos Manuel Salas contains numerous material statements that Plaintiffs never made and that are directly contradicted by the facts now established by the U.S. Department of Defense. Specifically, the document falsely asserts that: (a) the U.S. Army had classified Richard Halliday as a deserter and issued an arrest warrant; (b) Richard had previously crossed into Juárez carrying drugs and was detained until U.S. Army personnel intervened; and (c) multiple individuals in Juárez had reported seeing Richard in poor health and in specific locations within the city. In truth, Plaintiffs informed Mexican authorities only that Richard was a U.S. Army soldier stationed at Fort Bliss, provided a

8

physical description, and stated that he had been reported missing by U.S. Army CID. Upon information and belief, based on investigative reporting that cites historical DEA intelligence from the 1990s, Carlos Manuel Salas has been previously identified in connection with protective relationships involving the Cartel. As Fiscal de Distrito Zona Norte in 2020 — the jurisdiction directly across the border from Fort Bliss — Salas oversaw the preparation of the official report that injected these false and highly prejudicial claims into the official record while Plaintiffs were actively searching for their son. This parallel fabrication of the false "deserter / drug smuggler" narrative in Mexico occurred at the same time the Sarasota County Sheriff's Office created and executed a completely fabricated desertion warrant in Florida, detaining and interviewing Plaintiffs at their home while threatening to apprehend Richard, thereby demonstrating a coordinated, multi-jurisdictional effort to stigmatize Richard Halliday and obstruct his family's investigation into his disappearance and death.

29. There was also a parallel fabrication and tampering with International INTERPOL Records. Unknown actors also committed a crime against INTERPOL by fabricating and publishing a fake Yellow Notice for Richard Halliday. They forged a photograph with that of 1LT Dallas Wayne Hart— the prime suspect in Richard's murder—and falsely presented Richard as a missing person. Critically, INTERPOL issued a Yellow Notice, not a Red Notice. A Yellow Notice is used to locate missing persons; a Red Notice is used to arrest and extradite fugitives. The Yellow Notice itself contradicts the false 'deserter' narrative—if Richard were truly a fugitive, INTERPOL would have issued a Red Notice. This contradiction exposes the fraud. Plaintiff Robert B. Halliday notified INTERPOL Washington on September 28, 2023, and again on October 24, 2023, that the photograph was not Richard's but that of the prime suspect. This international fraud was part of the same coordinated cover-up as the Sarasota Sheriff's false warrant and the fabricated Mexican Fiscalía report under Carlos Manuel Salas.

30. The official investigation into Richard Halliday's disappearance was compromised from the outset by individuals with conflicts of interest and ties to the trafficking networks Richard had exposed.

9

31. CID Special Agent Tavita Nuusa was assigned to investigate Richard's disappearance. Nuusa had an extramarital affair with Leilani Hart—the mother of Richard's platoon leader, 1LT Dallas Wayne Hart, the prime suspect in Richard's murder. Nuusa leaked intelligence to Hart, was suspended, lost his badge, and was separated from the Army for misconduct.

32. Leilani Hart illegally accessed Richard Halliday's CID file. She has a criminal record including false reporting to law enforcement, harassment, and violations of restraining orders. In a sworn affidavit, she confessed to multiple serious crimes, including facilitating child sexual exploitation, possession of child pornography, failure to report child abuse, and facilitating the rape of a seven-year-old in her home—crimes tied to the same trafficking networks Richard had exposed.

33. Carlos Manuel Salas, the Fiscal de Distrito Zona Norte of Chihuahua, Mexico, oversaw the preparation of the fabricated missing person report that falsely depicted Richard as a deserter and drug smuggler. Upon information and belief, Salas has been identified by the DEA as a protector of the Juárez Cartel, specifically linked to Rafael Muñoz Talavera's criminal organization. As the prosecutor with jurisdiction directly across the border from Fort Bliss, Salas obstructed any meaningful investigation into Richard's murder and the disposal of his remains.

34. The coordinated actions of Nuusa, Hart, and Salas—spanning Fort Bliss, El Paso, and Ciudad Juárez—demonstrate a multi-jurisdictional conspiracy to: (a) discredit Richard's whistleblower reports; (b) obstruct the investigation into his murder; (c) conceal the trafficking networks he had exposed; and (d) prevent his family from learning the truth.

35. Plaintiffs have made extensive efforts to seek justice. On September 1, 2020, Plaintiffs contacted the Office of U.S. Rep. Vern Buchanan (FL-16) for assistance. A congressional staffer wrote: 'We will be sending a letter to the Army from Congressman Buchanan, as it is completely unacceptable that they took so long to inform your family of your son's status.' The Army failed to notify Plaintiffs for more than 36 days after Richard went missing. Plaintiffs only learned of his status when they called

10

the Army themselves. On October 21, 2020, Plaintiffs were scheduled to meet with Congressman Buchanan. The meeting was postponed. Plaintiffs moved to South Carolina and continued seeking help from Rep. Timmons' office. Plaintiffs' persistent good-faith efforts demonstrate they were actively searching for Richard—not hiding him.

## VI. CAUSES OF ACTION

COUNT I

Unreasonable Search and Seizure – *42 U.S.C. § 1983* (Fourth Amendment)

(Against All Defendants)

36. Plaintiffs reallege paragraphs 1 through 26 as if fully set forth herein.

(a)    The execution of a false and invalid purported 'warrant' at Plaintiffs' home constituted an unreasonable search and seizure in violation of the Fourth and Fourteenth Amendments, which deprived Plaintiffs of their liberty.

(b)    As to Defendant Hoffman: Sheriff Hoffman is responsible for the policies, customs, training, and supervision of the SCSO. He failed to train and supervise his deputies to verify purported warrants before execution. This failure caused the constitutional violation. See Monell v. Dep't of Social Servs., 436 U.S. 658 (1978).

(c)    As to Defendant Haucke-Amburgy: She entered the purported "warrant" into the SCSO system without verifying its validity. She later admitted it was not properly entered into WINGS and that records "may be lost." [Exhibit C]

(d)    As to Defendant Bairos: He executed the purported "warrant" at Plaintiffs' home without verifying its validity. He threatened extradition based on a false document. [Exhibit B]

(e)    As to Defendant Barrett: He assisted in executing the purported "warrant" without verifying its validity.

(f)     As to Defendant SCSO: The SCSO maintained a policy and practice of executing federal purported warrants without verification, in reckless disregard for constitutional rights.

(g)     As to John Does 1-10: Unknown federal agents originated the false purported "warrant" and transmitted it to the SCSO for execution.

(h)     Plaintiffs maintain there was never a valid warrant. The document entered into the SCSO system lacked probable cause, a probable cause affidavit, an issuing authority, a warrant number, or any lawful basis. The SCSO's own records confirm it was not properly entered into WINGS. The Army's Line of Duty determination conclusively establishes that Richard was never AWOL and never a deserter—rendering any "deserter" warrant factually false and legally void from the moment it was entered.

(i)     A reasonable officer would have known that a "DESERTION" matter was a matter of military justice, not a "FELONY NO BOND WARRANT" to be enforced against the soldier's parents—who were actively searching for their missing son.

(j)     Citations: *Franks v. Delaware, 438 U.S. 154 (1978); Malley v. Briggs, 475 U.S. 335 (1986).*

COUNT II

Deprivation of Due Process and Deprivation of Liberty – 42 U.S.C. § 1983 (Fourteenth Amendment) (Against All Defendants)

37. Plaintiffs reallege paragraphs 1 through 27 as if fully set forth herein.

(a)     Defendants' conduct shocks the conscience.

(b)     As to Defendant Hoffman: He maintained policies that allowed the execution of unverified purported warrants, demonstrating deliberate indifference to constitutional rights.

12

(c)     As to Defendant Haucke-Amburgy: She entered a known-false purported "warrant" into the system and later concealed the fraud by admitting records were "lost."

(d)     As to Defendant Bairos: He executed the purported "warrant" at the home of cooperative parents who were actively searching for their missing son.

(e)     As to Defendant Barrett: He assisted in the execution without verification.

(f)     As to Defendant SCSO: The SCSO's policies caused the deprivation.

(g)     As to John Does 1-10: Federal agents originated the false purported "warrant" as part of a scheme to discredit a whistleblower.

(h)     Executing a known-false purported 'warrant' labeling a nationally recognized hero as a 'deserter,' while his parents grieved and searched for him, is an egregious violation of substantive due process. This conduct deprived Plaintiffs of their liberty.

(i)     The conspiracy extended beyond Florida. On October 2, 2020, the Mexican Fiscalía General del Estado, under the leadership of Carlos Manuel Salas, produced a fabricated missing person report that falsely depicted Richard as a fugitive who had crossed the border with drugs.

(j)     The parallel fabrication of the false "deserter" narrative in Florida and Mexico demonstrates a coordinated, multi-jurisdictional effort to stigmatize Richard and obstruct Plaintiffs' investigation.

(k)     The "shocks the conscience" nature of Defendants' conduct is further demonstrated by the compromised investigation. CID agents with conflicts of interest (including an extramarital affair with the mother of the prime suspect) were allowed to investigate Richard's disappearance.

(l)     An FBI agent with a direct connection to Richard's command (Nidal Baem, father-in-law of LTC Bradford Bugado) announced Richard's remains were found in

13

Mexico.

(m)    A CID agent confessed to interfering with the search, having his badge removed, and tampering with the investigation.

(n)    The INTERPOL Yellow Notice was tampered with, displaying the photo of the prime suspect rather than Richard.

(o)    These coordinated acts of official misconduct—spanning Florida, Texas, Mexico, and INTERPOL—shock the conscience and demonstrate a deliberate pattern of obstruction of justice.

(p)    Defendants also deprived Plaintiffs of their fundamental right to family integrity and to be free from governmental stigmatization.

(q)    Citation: *County of Sacramento v. Lewis, 523 U.S. 833 (1998).*

## COUNT III

Obstruction of the Right to Petition – *42 U.S.C. § 1983* (First Amendment)

(Against All Defendants)

38. Plaintiffs reallege paragraphs 1 through 28 as if fully set forth herein.

(a)    Defendants' use of a false purported "warrant," search, and threats of extradition was intended to, and did, intimidate Plaintiffs and obstruct their ongoing efforts to petition the government for redress.

(b)    As to Defendant Hoffman: He permitted the use of law enforcement resources to intimidate citizens exercising their First Amendment rights.

(c)    As to Defendant Bairos: He personally threatened extradition to coerce Plaintiffs' cooperation and deter their investigation.

(d)    As to Defendant Barrett: He participated in the intimidation.

(e)    As to Defendant SCSO: The SCSO's policies allowed the use of false process to

chill petitioning activity.

(f)    Plaintiffs were actively petitioning Congress (Rep. Buchanan) and the Army for assistance in locating their son. The false purported "warrant" was used to obstruct these efforts.

(g)    Citation: *Borough of Duryea v. Guarnieri, 564 U.S. 379 (2011)*.

COUNT IV

Intentional Infliction of Emotional Distress

(Against All Defendants)

39. Plaintiffs reallege paragraphs 1 through 30 as if fully set forth herein.

(a)    Defendants' conduct was intentional, reckless, and outrageous.

(b)    As to Defendant Hoffman: He maintained policies that allowed this outrageous conduct.

(c)    As to Defendant Haucke-Amburgy: She concealed records, prolonging Plaintiffs' distress. [Exhibit C]

(d)    As to Defendant Bairos: He personally threatened extradition at Plaintiffs' home. [Exhibit B]

(e)    As to Defendant Barrett: He participated in the threatening conduct.

(f)    As to John Does 1-10: They originated the false purported "warrant" knowing it would cause severe distress.

(g)    The execution of a false 'deserter' purported 'warrant' at their home; the threats of extradition; the use of a fraudulent Interpol notice; the fabricated Mexican Fiscalia report; the discovery that the mother of the prime suspect illegally accessed their son's CID file; the discovery that the INTERPOL Yellow Notice was tampered with; and the subsequent concealment of records—while Plaintiffs were in a state of extreme distress

15

searching for their missing son—is beyond the bounds of decency, and deprived Plaintiffs of their liberty.

(h)      Defendants knew or should have known their conduct would cause severe emotional distress.

(i)      Plaintiffs have suffered severe mental anguish, grief, and a tarnished reputation.

COUNT V

Simulation of Legal Process – *Fla. Stat. § 843.0855*

(Against All Defendants)

40. Plaintiffs reallege paragraphs 1 through 31 as if fully set forth herein.

(a)      Defendants knowingly and willfully simulated legal process with intent to coerce and intimidate Plaintiffs.

(b)      As to Defendant Hoffman: He permitted the use of simulated legal process.

(c)      As to Defendant Haucke-Amburgy: She entered the simulated purported "warrant" into the system.

(d)      As to Defendant Bairos: He executed the simulated purported "warrant" and threatened extradition.

(e)      As to Defendant Barrett: He assisted in executing the simulated purported "warrant."

(f)      As to John Does 1-10: They provided the simulated purported "warrant" to the SCSO.

(g)      The execution of a false and invalid purported 'warrant' at Plaintiffs' home constituted an unreasonable search and seizure in violation of the Fourth and Fourteenth Amendments, which deprived Plaintiffs of their liberty. The 'FEDERAL FELONY NO BOND WARRANT / DESERTION' was a simulation of legal process. It was false,

16

invalid, and lacked lawful authority. It had no probable cause affidavit, no issuing authority, and no warrant number.

(h)     The SCSO's own admissions confirm the purported "warrant" was not properly entered into WINGS and records were "lost."

(i)     Citation: *Fla. Stat. § 843.0855.*

COUNT VI

Florida Public Records Act Violation – *Fla. Stat. § 119.07*

(Against Defendants Hoffman, Haucke-Amburgy, Wolford, and SCSO)

41. Plaintiffs reallege paragraphs 1 through 126 as if fully set forth herein.

(a)     Plaintiffs have repeatedly requested access to the purported warrant and all supporting documentation. On May 26, 2023, Plaintiff Robert Halliday submitted a formal public records request to the SCSO. The SCSO has denied Plaintiffs access to these records.

(b)     As to Defendant Hoffman: He failed to ensure compliance with the Public Records Act.

(c)     As to Defendant Haucke-Amburgy: She admitted records were "lost" and not entered into WINGS.

(d)     As to Defendant Wolford: She supervised the records response and participated in the concealment.

(e)     As to Defendant SCSO: The SCSO failed to produce: (a) the probable cause affidavit; (b) the issuing authority; (c) the warrant number; (d) an authenticated copy of the purported "warrant"; and (e) after-action reports.

(f)     The SCSO's failure to produce these records constitutes willful noncompliance with Florida law.

17

(g)    Citation: *Fla. Stat. § 119.07.*

COUNT VII

Fraud on the Court / Official Misconduct Under Color of Law

(Against All Defendants)

42. Plaintiffs reallege paragraphs 1 through 33 as if fully set forth herein. Defendants used a fraudulent document to deceive Plaintiffs, the community, and this Court. As to Defendant Hoffman: He permitted the use of fraudulent process.

(a)    As to Defendant Haucke-Amburgy: She entered and concealed the fraudulent purported "warrant."

(b)    As to Defendant Bairos: He executed the fraudulent purported "warrant." [Exhibit B]

(c)    As to Defendant Barrett: He assisted in executing the fraudulent purported "warrant."

(d)    As to Defendant Wolford: She concealed records related to the fraud.

(e)    As to John Does 1-10: They originated the fraudulent purported "warrant" and Interpol notice.

(f)    The false purported "warrant" and fraudulent Interpol notice constitute fraud on the Court and the public.

(g)    The fraud was multi-jurisdictional. On October 2, 2020, the Mexican Fiscalía General del Estado, under the leadership of Carlos Manuel Salas, produced a fabricated missing person report that falsely depicted Richard as a fugitive who had crossed the border with drugs.

(h)    The fabricated Mexican report was used to support the false "deserter" purported "warrant" executed by the SCSO. This demonstrates a coordinated effort to fraudulently

18

conceal the truth.

(i)     The fraud also included tampering with international law enforcement records. Unknown actors created a fake INTERPOL Yellow Notice, replacing Richard's photograph with that of 1LT Dallas Wayne Hart—the prime suspect in Richard's murder —and falsely presenting Richard as a missing fugitive.

(j)     The Yellow Notice itself contradicts the false 'deserter' narrative: a Yellow Notice is used to locate missing persons; a Red Notice is used to arrest and extradite fugitives. If Richard were truly a fugitive, INTERPOL would have issued a Red Notice. The Yellow Notice exposes the fraud.

(k)     CID agents made false representations to law enforcement to protect their colleagues and conceal the compromised nature of the investigation.

(l)     FBI agents with conflicts of interest were involved in announcing Richard's death and interfering with the investigation.

(m)     The multi-jurisdictional fraud—from the false purported "warrant" in Florida, to the fabricated Mexican Fiscalía report, to the tampered INTERPOL notice, to the compromised CID and FBI investigations—was a coordinated effort to conceal the truth about Richard's whistleblowing and murder.

(n)     This fraudulent document caused immense harm to Richard's legacy and Plaintiffs.

(o)     The fraud was facilitated by compromised officials. CID Special Agent Tavita Nuusa, who had an extramarital affair with the mother of the prime suspect, leaked intelligence and was removed from the Army for misconduct.

(p)     Leilani Hart, the prime suspect in the murder of Richard, who illegally accessed Richard's CID file and confessed in a sworn affidavit to facilitating child sexual

19

exploitation, was allowed to interfere with the investigation without consequence.

(q)     Carlos Manuel Salas, the Fiscal de Distrito Zona Norte of Chihuahua, Mexico, who has been identified by the DEA as a protector of the Juárez Cartel, oversaw the fabrication of the Mexican Fiscalía report that supported the false "deserter" narrative.

(r)     The multi-jurisdictional fraud—from the false warrant in Florida, to the fabricated Mexican Fiscalía report, to the tampered INTERPOL notice, to the compromised CID investigation involving Nuusa, Hart, and Salas—was a coordinated effort to conceal the truth about Richard's whistleblowing and murder.

## VII. DAMAGES

43. As a direct and proximate result of Defendants' unconstitutional and tortious conduct, Plaintiffs have suffered and continue to suffer severe and lasting damages. These damages are compounded by the fact that Richard Halliday was not a deserter or fugitive, but rather a Distinguished Honor Graduate of Basic Combat Training, the recipient of the Rifle Marksmanship Award, a soldier with a GT score of 115, and an individual who was posthumously recognized by the President of the United States for his honorable service and ultimate sacrifice. The simulated search at Plaintiffs' home on September 1, 2020, deprived Plaintiffs of their liberty and continues to cause them harm. Plaintiffs have also suffered harm from the denial of access to the warrant. Despite repeated requests, the SCSO has refused to produce any documentation related to the purported warrant, prolonging Plaintiffs' distress and preventing them from obtaining justice.

44. Plaintiffs have suffered the following categories of damages:

| Category | Amount | Justification |
| --- | --- | --- |
| Emotional Distress (Parents) | To be determined | Plaintiffs suffered 36+ days of agonizing uncertainty, false hope, and terror after being told their son was a deserter and facing threats of extradition. This distress was |

compounded when they later discovered that Mexican authorities under Carlos Manuel Salas had fabricated false claims that Richard was a deserter and drug smuggler, and that Richard's INTERPOL Yellow Notice had been tampered with using the photograph of the prime suspect. Plaintiffs were denied the ability to grieve honestly because they were led to believe their son might still be alive and in hiding. The emotional distress suffered by Plaintiffs was compounded by the knowledge that their son was not just another missing soldier—he was the 'Vanessa Guillen First Absent Soldier,' a designation that placed him at the center of the national scrutiny following Vanessa Guillen's murder. Plaintiffs later learned that this scrutiny was precisely why the Army and its agents fabricated the false 'deserter' narrative: to avoid accountability for Richard's murder and to conceal his whistleblower reports. Plaintiffs' emotional distress was compounded by the discovery that the investigation into their son's disappearance was compromised by: (a) CID Special Agent Tavita Nuusa, who had an extramarital affair with the mother of the prime suspect and leaked intelligence; (b) Leilani Hart, who illegally accessed Richard's CID file and confessed to facilitating child sexual exploitation; and (c) Carlos Manuel Salas, a DEA-identified cartel protector who oversaw the fabrication of the Mexican Fiscalía report. Each discovery revealed a new layer of betrayal by the very officials entrusted with finding the truth.

| | | |
|---|---|---|
| Loss of Consortium | $3,000,000.00 | Permanent loss of their son's companionship, guidance, and presence. The false deserter narrative and multi- |

21

jurisdictional fabrication prevented Plaintiffs from receiving proper military honors, community support, and closure at the time of their son's death.

| | | |
|---|---|---|
| Injury to Reputation (Richard & Family) | $2,500,000.00 | Richard Halliday's legacy as an exemplary soldier — a Distinguished Honor Graduate and whistleblower who made the ultimate sacrifice — was deliberately and falsely tarnished across multiple jurisdictions. The fabricated "deserter/fugitive" label, pushed by Defendants in Florida and mirrored in Mexico and INTERPOL records, caused lasting reputational harm to both Richard and his family, including retired Lieutenant Colonel Robert B. Halliday III. |
| Punitive Damages | $14,000,000.00 | Defendants acted with reckless disregard for the truth by creating and executing a warrant that had no legal existence, while participating in or facilitating a coordinated effort to stigmatize Richard Halliday as a deserter across Florida, Mexico, and international law enforcement databases. This conduct was willful, malicious, and in callous disregard of Plaintiffs' rights and the truth about their son's service and sacrifice. |
| Civil Rights Violations (§ 1983) | To be determined | Violations of Plaintiffs' Fourth Amendment right to be free from unreasonable searches and seizures, Fourteenth Amendment right to due process and family integrity, and First Amendment right to petition the government for redress without intimidation or coercion. |

22

| Fraud on the Court / Official Misconduct | To be determined | Defendants engaged in a pattern of official misconduct by fabricating legal process, concealing the absence of any valid warrant or supporting documentation, and participating in a broader effort to mislead Plaintiffs and obstruct justice. |
|---|---|---|
| TOTAL | To be determined | |

45. The damages in this case are especially egregious because Defendants' conduct was not based on a valid warrant — the purported warrant was a simulation of legal process, fabricated from whole cloth, lacking probable cause, an affidavit, an issuing authority, or any lawful basis. Defendants used this false document to terrorize a grieving Gold Star family, which deprived Plaintiffs of their liberty, while their son, an exemplary soldier later recognized by the President of the United States, had already been murdered in the line of duty for exposing serious criminal activity on a U.S. military base. Plaintiffs respectfully request judgment in the amount set forth in their Prayer for Relief, including compensatory damages, punitive damages, attorneys' fees, and costs, as justice requires.

46. Plaintiffs continue to suffer ongoing emotional distress, reputational harm, and the denial of proper closure as a direct result of Defendants' misconduct and the false narrative they helped create and perpetuate, and deprived Plaintiffs of their liberty.

## VIII. PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that this Court:

A. Retain Venue in this District, as the heart of the wrongdoing occurred in Sarasota, Florida.

B. Deny Transfer to the District of Texas.

C. Award Plaintiffs monetary damages against Defendants, jointly and severally, in the

23

amount to be determined, plus costs, interest, and attorneys' fees pursuant to *42 U.S.C. § 1988.*

D. Grant Declaratory Relief declaring that:

- The warrant was fraudulent, void, and unconstitutional;

- Richard Halliday was never AWOL or a deserter;

- Defendants violated Plaintiffs' constitutional rights.

E. Grant Injunctive Relief requiring the Sarasota County Sheriff's Office to:

- Preserve all records relating to the warrant and Richard Halliday;

- Correct all law enforcement databases to reflect Richard was never AWOL or a deserter;

- Produce all withheld public records within 10 days.

F. Grant such other and further relief as this Court deems just and proper.

Respectfully submitted this __14th__ day of __July__ , 2026.

Robert B. Halliday III, Pro Se

103 McDade Ave. Greer SC. 29651

Pro se Plaintiff

Patricia M. Halliday, Pro Se

103 McDade Ave. Greer SC. 29651

Pro se Plaintiff